UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | |
|---|---|
| VERNA L. MORGAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Civil No. 12-36-ART <br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The plaintiff, Verna L. Morgan, seeks judicial review of the Commissioner's decision denying her retroactive disability benefits for her multiple sclerosis. *See* 42 U.S.C. § 405(g). Because substantial evidence supports the Commissioner's decision, Morgan's motion for summary judgment, R. 13, is denied and the Commissioner's motion for summary judgment, R. 20, is granted.

## BACKGROUND

Morgan first filed for disability benefits in 2001. An Administrative Law Judge ("ALJ") denied her claim in July 2003, and the Appeals Council denied review. R. 9-1 at 47–56 (Tr. at 43–52). Morgan did not appeal further, so the ALJ's decision became final and non-reviewable. R. 9-3 at 314 (Tr. at 1109); *see* 20 C.F.R. § 422.210(c) (Stating that any action to obtain judicial review of an ALJ's decision must be instituted within sixty days of the Appeals Council's denial of review); *Bowen v. City of New York*, 476 U.S. 467, 478 (1986) ("[T]he 60-day requirement is not jurisdictional, but rather constitutes a period of limitations").

In November 2003, Morgan filed a second application for disability benefits. Again, she alleged that her disability began in October 2001. In April 2006, an ALJ denied Morgan's second application. R. 9-2 at 316–25 (Tr. at 713–22). Morgan then filed a third application for benefits while simultaneously appealing the ALJ's denial of her second application. R. 9-2 at 400 (Tr. at 797); R. 9-3 at 1–2 (Tr. at 798–99). The third time was the charm; the Social Security Administration approved Morgan's final application. R. 9-2 at 331 (Tr. at 728). However, the Administration limited Morgan's disability onset date to April 1, 2006, based on the second ALJ decision. *Id*. at 400 (Tr. at 797); R. 9-3 at 1–2 (Tr. at 798–99).

Noting the discrepancy in outcome between Morgan's second and third applications, the Appeals Council remanded Morgan's appeal of her second application to determine whether she was disabled before April, 2006. Tr. 9-2 at 400 (Tr. at 797); Tr. 9-3 at 1–2 (Tr. at 798–99). An ALJ found Morgan was not disabled between July 2003 (the date of the first ALJ decision) and April 2006. R. 9-3 at 344–55 (Tr. at 1139–50). Morgan appealed this decision, but the Appeals Council denied review. R. 9-1 at 13–16 (Tr. at 9–12). Morgan filed for federal review, but the Court remanded her case at the Commissioner's request. R. 9-3 at 363–68 (Tr. at 1158–63).

In February 2011, an ALJ again considered whether Morgan was disabled before April 2006. R. 9-3 at 314–40 (Tr. at 1109–35). The ALJ declined to reopen the 2003 denial decision, and then applied the traditional five-step analysis for Social Security decisions to determine whether Morgan was disabled between July 2003 and April 2006. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003); R. 9-3 at 314–40 (Tr. at 1109–35). The ALJ found that during this time period: (1) Morgan

had not engaged in substantial gainful activity; (2) Morgan's severe impairments included multiple sclerosis, chronic obstructive pulmonary disease, asthma, lupus, being status post carpal tunnel release, and osteoarthritis; (3) Morgan's impairments, whether considered singly or in combination, did not meet or equal the requirements of a listing section in the Listing of Impairments; (4) Morgan's 2003 residual functional capacity ("RFC") was unchanged between July 2003 and April 2006. Morgan could perform sedentary work, restricted by a need to change position between sitting and standing in thirty-minute intervals, no more than frequent use of the upper extremities for fine and gross manipulation, and a need to avoid moderate exposure to temperature extremes; and (5) Morgan would not be able to return to her past relevant work as a dry cleaning clerk, but was capable of performing a significant number of other jobs in the national economy. R. 9-3 at 314–40 (Tr. at 1109–35). The ALJ therefore found Morgan was not disabled from July 2003 to April 2006. *Id.* at 339–40 (Tr. at 1134–35).

The Appeals Council declined review of Morgan's appeal, and this action followed. R. 9-3 at 283–87 (Tr. at 1078a–82); R. 2.

## DISCUSSION

Morgan did not comply with the Court's order to include a numbered list of arguments in her motion for summary judgment. That failure alone justifies denying her motion. R. 10 at 3 (stating further that "[f]ailure to submit such a statement may constitute grounds for denial of [a summary judgment] motion"). But even a review of the merits demonstrates Morgan's appeal lacks merit. Morgan's arguments can be grouped into three categories: (1) That the ALJ erred in not reopening the 2003

decision; (2) That the ALJ erred in not finding Morgan disabled from 2003 to 2006; (3) That the ALJ erred in not finding Morgan's mental impairments disabling. R. 13-1 at 4–5, 11. The Court reviews the ALJ's decision to determine whether "substantial evidence" supports his conclusion. Substantial evidence is proof that "a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted). The ALJ's decision easily meets that standard.

I.     Disability Prior to 2003

Morgan argues that the ALJ should have reopened the first denial decision and found her disabled before July 2003. R. 13-1 at 4–5, 13–15. The first decision became final when Morgan did not appeal the Council's denial of review. While an ALJ may reopen a final decision under certain circumstances, the Court may not review the ALJ's decision in the absence of a colorable constitutional claim. *Califano v. Sanders*, 430 U.S. 99, 107–09 (1977); *see* 20 C.F.R. §§ 404.988 (allowing reopening "[w]ithin four years of the date of the notice of the initial determination if we find good cause . . . to reopen the case"); 404.989 (describing good cause). Since Morgan does not allege a constitutional violation, the Court must cabin its review to the period between July 2003 and April 2006.

II.    Disability from 2003 to 2006

Morgan believes that the ALJ made four errors when he found her not disabled from July 2003 to April 2006. She argues that the ALJ (1) failed to give appropriate weight to her medical evidence; (2) ignored the new and material evidence she presented in support of her claim; (3) erred in evaluating the credibility of her lay

4

witnesses; and (4) failed to properly apply Social Security Ruling ("SSR") 83-20 in determining her disability onset date.

*Medical Evidence*: Morgan believes that the ALJ failed to properly consider the medical evidence in her case. First, Morgan argues that ALJ ignored evidence from her treating physicians, Doctors Becker and Kunath. R. 13-1 at 9–11. Because both doctors were treating physicians, the ALJ was required to give their opinions controlling weight if they were "well-supported by medically acceptable clinical and laboratory techniques" and not "inconsistent with the other substantial evidence" in the record. *See* 20 C.F.R. § 404.1527(c)(2). But the ALJ considered both doctors' opinions holistically and gave good reasons why he did not find them supported by the record. *Wilson v. Comm'r Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (noting that ALJ must provide "good reasons for not giving weight to a treating physician" (internal quotation omitted)).

Dr. Becker treated Morgan over several years for multiple sclerosis. R. 9-2 at 155–63 (Tr. at 552–60). In September 2005, Dr. Becker assessed Morgan's ability to do work-related activities as significantly more limited than the ALJ's RFC. *Id.* at 156–58 (Tr. at 553–55). Dr. Becker opined that, as a result of her multiple sclerosis, Morgan was unable to stand or walk for more than two hours a day in fifteen minute intervals, and was unable to sit for more than a total of three hours a day in intervals of one to two hours. Dr. Becker also stated that Morgan was limited in reaching, handling, feeling, and pushing/pulling, and would need to avoid exposure to heights, temperature extremes, humidity and vibration. *Id*.

5

The ALJ found Dr. Becker's restrictions unsupported by the record before April 2006. R. 9-3 at 334 (Tr. at 1129). Why? First, Dr. Becker's assessment was inconsistent with Morgan's earlier testimony that she could carry a laundry basket up a flight of stairs and stand for over fifteen minutes at a time. R. 9-3 at 331, 334 (Tr. at 1126, 1129). Second, in September 2005, Dr. Becker noted that Morgan's multiple sclerosis had not exacerbated since 2002, that Morgan was fully oriented, could hop once on either foot, and could ambulate independently. *See* R. 9-2 at 160–167 (Tr. at 557–64). So Dr. Becker's assessment of Morgan's restrictions did not align with his own medical records. Thus, the ALJ's decision to discount Dr. Becker's assessment was supported by substantial evidence. Dr. Becker also opined that Morgan was totally disabled since 2001, R. 9-3 at 136 (Tr. at 933), but this legal conclusion was not binding on the ALJ. *See* 20 C.F.R. § 404.1527(d)(1).

Dr. Kunath treated Morgan's lupus for several years. R. 9-2 at 53–56; 64–72 (Tr. at 450–53, 461–69); R. 9-3 at 98 (Tr. at 895). In January 2005, Dr. Kunath found that Morgan's lupus would prevent her from lifting more than five pounds occasionally, and that she would never be able to climb, stoop, kneel, balance, crouch, and crawl. Dr. Kunath also found that Morgan was unable to stand or walk for more than two hours a day in fifteen minute intervals, and that she could not sit for more than three hours a day in one to two hour intervals. R. 9-2 at 54–56 (Tr. at 451–53).

The ALJ found that Morgan's medical record did not support such severe restrictions. R. 9-3 at 332 (Tr. at 1127). First, Dr. Kunath's treating records never noted a lupus flare-up. In fact, Dr. Kunath repeatedly noted no significant swelling in Morgan's joints and only minimal morning stiffness. R. 9-1 at 323 (Tr. at 319); Tr. 9-

6

2 at 57, 204, 208 (Tr. at 454, 601, 605). Second, Morgan's inability to lift more than five pounds might have been a temporary restriction due to her hernia repair, rather than a permanent condition attributable to lupus. R. 9-2 at 54 (Tr. at 451); R. 9-3 at 332 (Tr. at 1127). Finally, Dr. Kunath's opinion was at odds with Morgan's prior testimony that she could stand for over fifteen minutes at a time. R. 9-3 at 332 (Tr. at 1127). So Dr. Kunath's report of Morgan's restrictions did not fit with the objective medical evidence in this case. Thus, the ALJ's decision to give little weight to Dr. Kunath's opinion was supported by substantial evidence. *See Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) ("An ALJ must give the treating source's opinion . . . controlling weight if it is 'well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] case record.'" (quoting 20 C.F.R. § 404.1527(d)(2)) (second alteration in original)).

Morgan also takes issue with the ALJ's rejection of Dr. Dawson's opinion. Dr. Dawson, a non-examining medical advisor, opined that Morgan's multiple sclerosis was disabling as of June 1, 2005. R. 9-3 at 100 (Tr. at 897). Since this finding became the basis for Morgan's disability award, Morgan naturally contends that she was disabled—at minimum—from June 2005 onward. R. 13-1 at 2, 7. But the ALJ specifically considered, and rejected, this amendment to Morgan's disability onset date. R. 9-3 at 334–38 (Tr. at 1129–33). As noted above, the bulk of Morgan's medical evidence (including the records of her treating physicians) did not indicate that Morgan's multiple sclerosis was disabling before April 2006. To the contrary: in September 2005, Dr. Becker noted that Morgan could hop once on either foot, and

7

could ambulate without a walker.  *Compare* R. 9-2 at 160–167 (Tr. at 557–64) (stating that Morgan could ambulate independently) *with* R. 9-3 at 92 (Tr. at 889) (noting use of a walker in May 2006).  And in May 2006, the same doctor noted that Morgan's multiple sclerosis was stable between November 2002 and April 2006.  R. 9-3 at 92 (Tr. at 889).

*New and Material Evidence*: Morgan asserts that the ALJ ignored new and material evidence of her disability because he misinterpreted the Court's remand order.  R. 13-1 at 13–15.  The Court remanded this case so the ALJ could evaluate Morgan's medical evidence and explicitly consider whether this evidence required a change from Morgan's 2003 RFC.  R. 9-3 at 366–68 (Tr. at 1161–63); *see Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) ("Absent evidence of [change] in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.").  The ALJ examined the record and found that Morgan's evidence was not sufficiently new or material to require a new RFC.  R. 9-3 at 316 (Tr. at 1111).  Contrary to Morgan's allegations, the ALJ's opinion describes the evidence in the record that led him to adopt the prior RFC.  In particular, the ALJ explained that he discounted the restrictive RFCs of Dr. Becker and Dr. Kunath because neither opinion was supported by the objective medical evidence or lay testimony.  *See* R. 9-3 at 314–40 (Tr. at 1109–35).  There is no indication that the ALJ simply ignored new or material evidence.

*Lay Witnesses*: Morgan also asserts that the ALJ failed to give specific reasons for rejecting both her testimony and her son's testimony.  R. 13-1 at 6-7, 11, 16.  Not so.  The ALJ documented a number of troubling features of their testimony.  First,

8

both witnesses' testified that Morgan suffered severe and chronic pain. But Morgan's medical records did not demonstrate the symptoms—such as muscle atrophy, muscle tremors, and muscle spasms—often associated with severe or long-standing pain. R. 9-3 at 321, 330 (Tr. 1116, 1125). So neither Morgan's subjective complaints nor her son's supporting testimony aligned with the objective medical evidence. *See also Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (requiring ALJs to evaluate subjective complaints by reference to the objective medical evidence). Morgan also testified inconsistently about her symptoms. In 2011, Morgan dated her inability to hold pens, tie shoes, and use buttons or zippers to 2001. R. 9-3 at 331 (Tr. at 1126). But during her 2003 and 2006 hearings Morgan reported being able to operate buttons, write with pens and pencils, do laundry, carry a basket of clothes up a flight of stairs, drive, and shop for groceries. *Id*. Thus, the ALJ's decision to discount the lay witness testimony was supported by substantial evidence. *See* 20 C.F.R. § 404.1529(a) (explaining that an ALJ will evaluate the extent to which a claimant's professed pain "can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

*SSR 83-20*: Morgan argues that the ALJ improperly applied SSR 83-20 to determine her disability onset date. R. 13-1 at 8. This ruling supplies ALJs with three factors to determine the onset on non-traumatic impairments: the claimant's allegations, her work history, and the medical and other evidence involved in the case. S.S.R. 83-20. Morgan points out that the first two factors weigh in her favor—she stopped working in 2001, the same year that she claims her disability began. R. 13-1 at 8. But the ALJ found that the third factor was firmly against Morgan. And this

fact was sufficient to find that Morgan was not disabled before April 2006. *See* SSR 83-20 ("The medical evidence serves as the primary element in the onset determination."); *Carmichael v. Bowen*, 914 F.2d 255 (6th Cir. 1990) ("[SSR 83-20] emphasizes that the claimant's alleged onset date should be adopted only if it is consistent with all the evidence available."). So the ALJ properly applied SSR 83-20 to this case.

III.   Mental Impairments

Morgan presses one final argument: She claims that the ALJ failed to properly evaluate her mental impairments. R. 13-1 at 6–7, 11–16. She is incorrect. Before April 2006, it appears that Morgan's depression and anxiety were only mildly restrictive and improved with medication. R. 9-3 at 319–20 (Tr. 1116–15) (noting further that Morgan did not produce any records of formal mental health care during this period). A psychiatric examination in March 2004 diagnosed Morgan with a depressive disorder in partial remission. R. 9-2 at 34 (Tr. 431). This exam noted a mild restriction in such areas as interacting with the public and coworkers, responding appropriately to work pressures, and responding to changes in a routine work setting. R. 9-2 at 35 (Tr. 432). Another exam one month later found Morgan's depression in partial remission and no severe limitations on her abilities. R. 9-2 at 39–42 (Tr. 436–39). In March and May of 2006, Dr. Becker noted that Morgan took medication for her depression, that her mood was "good," and that her memory, attention, and concentration were normal. R. 9-3 at 90, 97 (Tr. 887, 894). Thus, the ALJ's decision that Morgan's mental impairments were not severe was supported by substantial evidence.

## CONCLUSION

It is therefore **ORDERED** that Morgan's motion for summary judgment, R. 13, is **DENIED**, and the Commissioner's motion for summary judgment, R. 20, is **GRANTED**. This case is **STRICKEN** from the Court's active docket. The Court will enter a separate judgment.

This the 17th day of December, 2012.

Signed By:
*Amul R. Thapar* AT
United States District Judge